UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-23569-WILLIAMS/MCALILEY

DAVID S. PARESKY and
LINDA K. PARESKY,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

    The government has filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, which the Honorable Kathleen M. Williams referred to me. (ECF Nos. 68, 81). The Motion is fully briefed. (ECF Nos. 76, 83). I have carefully reviewed the parties' memoranda, the applicable law and the pertinent portions of the record. For the reasons explained below, I conclude that the Court lacks subject matter jurisdiction over Plaintiffs' claims for overpayment interest for tax years 2003 through 2006 because they did not timely file an administrative claim with the Internal Revenue Service. However, I conclude that the Court does have subject matter jurisdiction over Plaintiffs' claim for overpayment interest for tax year 2007 because it is undisputed that they timely filed an administrative claim for that tax year, and I agree with Plaintiffs that the Court has subject matter jurisdiction over a claim for overpayment interest pursuant to 28 U.S.C. § 1346(a)(1). Accordingly, I recommend that the Court grant the Motion to Dismiss in part.

1

I.      **BACKGROUND**

Plaintiffs seek to recover interest on their overpayment of taxes in tax years 2003, 2004, 2005, 2006 and 2007 (the "Overpayment Interest Claims"). (ECF No. 65 at ¶ 12). Plaintiffs' overpayment stemmed from losses they suffered as victims of the Bernie Madoff Ponzi Scheme. (*Id*. at ¶¶ 1-2). On December 31, 2009, Plaintiffs submitted a Form 1045 to the Internal Revenue Service ("IRS") to obtain refunds of taxes they paid in tax years 2003 through 2007, arising from a carryback of Madoff losses from 2008 to those years (the "Carryback Refunds"). (*Id*. at ¶ 14). The IRS issued the Carryback Refunds to Plaintiffs in April and May 2010. (*Id*. at ¶¶ 3, 30-35). *See also Paresky v. United States*, 139 Fed. Cl. 196, 200 (Fed. Cl. 2018). The amount of the Carryback Refunds is not an issue in this lawsuit. Instead, Plaintiffs allege that the IRS failed to pay them interest on the Carryback Refunds pursuant to 26 U.S.C. § 6611. (ECF No. 65 at ¶ 36).

Also at the end of 2009, Plaintiffs submitted Form 1040X to the IRS, in which they sought to apply their Madoff losses to reduce the fictitious amounts of income they reported receiving in tax years 2005 through 2007 (the "Fictitious Income Refunds"). (ECF No. 65 at ¶ 13). The refunds sought in the Forms 1040X were independent of the Carryback Refunds. (*Id*. at ¶ 17). Neither the Fictious Income Refunds, nor interest thereon, are at issue in this case.

After the IRS issued the Carryback Refunds, the IRS initiated a complete examination of Plaintiffs' tax liability for tax years 2003 through 2008, including the Carryback and Fictious Income Refunds. (*Id*. at ¶ 37). In January 2013, following the examination, the IRS approved the Carryback Refunds. (*Id*. at ¶ 45, Ex. I). The IRS,

however, has not paid Plaintiffs interest on the Carryback Refunds. In June 2014, Plaintiffs sent a letter to the IRS protesting, among other things, the agency's failure to pay them that interest. (ECF No. 65, Ex. J at pp. 2, 6-7). On September 10, 2014, Plaintiffs filed a formal claim with the IRS for payment of interest on the Carryback Refunds. (*Id.* at Ex. L). On September 24, 2015, the IRS denied Plaintiffs' claim. The denial letter included the following language upon which Plaintiffs relied:

> If you wish to bring suit or proceedings for the recovery of any tax, penalties or other moneys for which this disallowance notice is issued, you may do so by filing such a suit with the United States District Court having jurisdiction, or with the United States Court of Federal Claims. The law permits you to do this *within 2 years from the mailing date of this letter*.

(ECF No. 65 at Ex. M) (emphasis added).

    A.    The Court of Federal Claims Action

On September 15, 2017, within the specified two-year period, Plaintiffs filed suit against the United States in the Court of Federal Claims raising the same Overpayment Interest Claims they assert in this action. (ECF No. 1). The government moved to dismiss, arguing that the Overpayment Interest Claims are time-barred because they were filed outside the six-year statute of limitations governing claims brought under the Tucker Act, 28 U.S.C. § 1491(a)(1). *See Paresky*, 139 Fed. Cl. 196. The Tucker Act provides the Court of Federal Claims with jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

3

Plaintiffs argued, among other things, that the Tucker Act did not apply and that instead, their claims were governed by the statute of limitations applicable to suits for refunds under the Internal Revenue Code, 26 U.S.C. § 6532. *Id*. Plaintiffs also requested that, in the event the court found their claims untimely, it transfer their case to the Southern District of Florida, so that Plaintiffs could assert arguments as to tolling the statute of limitations and the proper statute of limitations to apply. *Id*.

The Court of Federal Claims held that, although there is split among circuits, under Federal Circuit binding law, "claims for overpayment interest are claims arising under the Tucker Act's general jurisdiction grant, and are thus subject to the Tucker Act's six-year statute of limitations." *Id*. at 206. The Court then found that the Overpayment Interest Claims were untimely and granted Plaintiffs' motion to transfer to this Court. *Id*. at 210-212. In granting transfer, the Court declined to decide the question the United States raised in the Motion to Dismiss – whether *this Court* has subject matter jurisdiction over the Overpayment Interest Claims – because it remains an open question in this Circuit. *Id.* at 211 ("Given that neither party has pointed to precedent that resolves how the Eleventh Circuit or the Southern District of Florida would address jurisdiction over claims for overpayment interest...it is not evident to the court that the Pareskys could *not* have filed their claims for overpayment interest in the District Court for the Southern District of Florida.... "). The Court declined to reach the merits of the jurisdictional issue because "[i]t is not the court's task in ruling on a motion for transfer to itself reach a tentative decision about how the district court might rule on that [jurisdictional] point." *Id.*

4

B. The Southern District of Florida Action

Following transfer, Plaintiffs filed their First Amended Complaint in this Court. (ECF No. 64, 65).[1] The government has filed a Motion to Dismiss asserting that the Court lacks subject matter jurisdiction for two reasons. (ECF No. 68). First, the government argues that claims for overpayment interest do not fall within 28 U.S.C. § 1346(a)(1). (*Id*. at 12-20). Section 1346(a)(1) provides that district courts have concurrent jurisdiction with the Court of Federal Claims over

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority *or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws.*

*Id*. (emphasis supplied). The government argues that § 1346(a)(1) only applies to lawsuits asserting a tax refund claim, and the statute is therefore inapplicable because overpayment claims are not refund claims.

Second, the government argues that even if § 1346(a)(1) applies, the Court still lacks jurisdiction because Plaintiffs' overpayment interest claims for tax years 2003-2006 are time barred. (ECF No. 68 at 20-25). The government contends that Plaintiffs did not timely file an administrative claim with the IRS seeking overpayment interest for those tax years, which is a jurisdictional prerequisite to filing this lawsuit.

---

[1] ECF No. 64 is the sealed version of Plaintiffs' First Amended Complaint, while ECF No. 65 is the publicly available redacted version. Plaintiffs filed a motion to seal their First Amended Complaint, which the Court has granted in part by separate Order of today's date. To avoid confusion, however, citations herein are to the publicly available version of the First Amended Complaint.

5

Plaintiffs filed a Response challenging both of the government's arguments for dismissal. (ECF No. 76). Plaintiffs direct the Court to decisions from the Sixth Circuit and district courts outside this circuit, which expressly hold that district courts have subject matter jurisdiction, under § 1346(a)(1), over overpayment interest claims. (*Id.* at 7-11). Plaintiffs also argue that the decisions upon which the government relies are inapposite because none considered the question of district court jurisdiction under § 1346(a)(1). (*Id.* at 11-15). As for the government's timeliness argument, Plaintiffs argue that the government is equitably estopped from asserting that their overpayment interest claims are time barred. (*Id.* at 20-21).[2] Plaintiffs further argue that they timely made *informal* claims with the IRS for overpayment interest, which satisfy the jurisdictional requirement. (*Id.* at 22-23).

## II.   ANALYSIS

A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quotation marks and citation omitted). The parties agree that the government's argument regarding the scope of jurisdiction under section 1346(a) is a facial attack.

---

[2] Plaintiffs also assert that the government waived the statute of limitations, but do so without offering any analysis or legal authority to support this argument. *Id.*

6

"A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Plaintiffs contend that the government's arguments regarding the timeliness of their administrative claims raise a factual attack, and that they are entitled to jurisdictional discovery before the Court can grant the Motion on that basis. (ECF No. 76 at 6). The only timeliness argument which relies upon matters outside the pleadings is Plaintiffs' equitable estoppel argument. However, as explained below, equitable estoppel cannot be used to excuse Plaintiffs' failure to timely file administrative claims regarding overpayment interest for tax years 2003 through 2006. Accordingly, the Court can rule on the government's timeliness argument without the need for jurisdictional discovery.

      A.    <u>This Court Has Subject Matter Jurisdiction Under 28 U.S.C. § 1346(a)(1)</u>

As mentioned above, the government argues that claims for overpayment interest are cognizable only under the Tucker Act. (ECF No. 68 at 7). District courts have limited jurisdiction under the Tucker Act. Specifically, under the "Little" Tucker Act, district courts have concurrent jurisdiction with the Court of Federal Claims for claims against the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2); *Meridian Investments, Inc. v. Fed. Home Loan Mortgage Corp.*, 855 F.3d 573, 578 (4th Cir. 2017). Jurisdiction over claims against the United States in excess of $10,000 is vested exclusively with the Court of Federal Claims. *Id.*; 28 U.S.C. § 1491(a)(1). According to the government, because the Overpayment Interest Claims are governed only by the Tucker Act, and the amount of those claims exceed $10,000, this Court lacks subject matter jurisdiction.

7

The question presented here – whether a district court has subject matter jurisdiction over overpayment interest claims when the taxpayer does not also bring a refund claim and the interest sought exceeds $10,000 – is an issue of first impression in this Circuit. Fortunately, this Court does not need to chart a new path to resolve the issue. The government has repeatedly asserted the same arguments they make here to the Sixth Circuit and other district courts, which have persuasively resolved those arguments in favor of the taxpayer.

In *E.W. Scripps Co. and Subsidiaries v. United States*, the Sixth Circuit Court of Appeals considered the same issue before this Court:

> does the district court have subject matter jurisdiction over a claim for interest on an overpayment of tax when there is no separate claim seeking a refund of the overpaid tax and the interest sought by the taxpayer exceeds $10,000?

420 F.3d 589, 593 (6th Cir. 2005). In a thorough and well-reasoned opinion, the Sixth Circuit concluded that the district court properly exercised subject matter jurisdiction over the suit pursuant to 28 U.S.C. § 1346(a)(1). As mentioned above, § 1346(a)(1) provides that district courts have jurisdiction over suits "against the United States for the recovery of ... any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." *Id*. The *Scripps* Court held that the "excessive sum" phrase in § 1346(a)(1) encompasses suits seeking recovery of statutory interest on overpayments. *Scripps*, 420 F.3d at 597-98. It reasoned that "[i]f the Government does not compensate the taxpayer for the time-value of the tax overpayment, the Government has retained more money than it is due, i.e., an 'excessive sum'." *Id*. at 597.

The *Scripps* Court rejected the same arguments that the government makes here, that (i) in order to be an "excessive" sum it must also be "wrongfully collected" (ii) the Court should follow a decision from the U.S. District Court for the Northern District of Illinois, *Amoco Production Co. v. United States*,[3] which held that overpayment interest claims do not fall within the scope of § 1346(a)(1), and (iii) § 1346(a)(1) can only apply to refund suits because the heading of 26 U.S.C. § 7422(a),[4] a provision which also includes the "any sum" clause, describes "refunds." (ECF No. 68 at 15-16, 18, 20).

With respect to the first argument, the *Scripps* Court correctly recognized that the "excessive sum" clause is disjunctive, as it reads "any sum alleged to have been excessive *or* in any manner wrongfully collected…." *Scripps*, 420 F.3d at 597 (emphasis added). The government contends that the Court should read the word "or" in this clause as an "and." (ECF No. 68 at 18). I am not persuaded by the government's argument, and note that it cites no case which has interpreted § 1346(a)(1) in this manner. The language in the statute is unambiguous, and I decline to rewrite the "any sum" clause as requested.

As for the government's remaining arguments, the Sixth Circuit properly found that the *Amoco* Court "failed to recognize that, although § 1346(a)(1) and § 7422(a) use parallel language, the two provisions serve different functions and thus have their own independent meanings." *Scripps*, 420 F.3d at 597-98. The *Scripps* Court therefore concluded that "even though a claim for statutory interest on an overpayment of tax might not fall within the

---

[3] No. 87C8811, 1988 WL 9112 (N.D. Ill. Feb. 5, 1988).

[4] Section 7422(a) is titled "No suit prior to filing claim for refund." *See also* 26 U.S.C. § 7422 (titled "Civil actions for refund").

9

scope of § 7422(a), this does not prevent statutory interest from being included with the 'any sum' clause of § 1346(a)(1)." *Id.* at 598. In other words, "§ 7422(a) does not limit § 1346(a)(1)." *Bank of America Corp. v. United States*, No. 3:17-cv-546, 2019 WL 2745856 at *4 (W.D. N.C. July 1, 2019).

I find the reasoning of *Scripps* persuasive and adopt it here.[5] Numerous other courts have either followed or reached the same conclusion as *Scripps*. *See e.g., Bank of America Corporation*, 2019 WL 2745856 at *2 (recognizing that "most courts that have considered the issue – including the Sixth Circuit – have held that, under § 1346(a)(1), district courts have subject matter jurisdiction over overpayment claims.") (citing cases); *Wichita Center for Graduate Medical Education v. United States*, No. 16-1054, 2016 WL 4000934 at *3-4 (D. Kan. July 26, 2016) (following *Scripps* to hold that district court had concurrent jurisdiction over claims for overpayment interest as a claim for "any sum" under § 1346(a)(1)). Tellingly, the Sixth Circuit expressly declined to revisit its decision in *Scripps*, thereby reaffirming its conclusion that district courts have jurisdiction over overpayment interest claims pursuant to the "excessive sum" language in § 1346(a)(1). *See Ford Motor Company v. United States*, 768 F.3d 580, 584 (6th Cir. 2014).

---

[5] The government makes two additional arguments why *Scripps* is wrong: (1) the Sixth Circuit's reliance on the Supreme Court's decision, *Flora v. United States*, 362 U.S. 145, 149 (1960), is misplaced because the *Flora* decision "contemplated" underpayment interest, not overpayment interest, and (2) the Court took the words "any sum alleged to have been excessive…" out of context because "the statute inquires whether the 'sum' was allegedly excessive from the *taxpayer's* perspective." (ECF No. 68 at 17, 19) (emphasis in original). With respect to the first argument, the government offers only speculation and, having read *Flora*, I am not persuaded that the Sixth Circuit misinterpreted that decision. As for its second argument, another district court recently considered and, I believe, reasonably rejected it. *See Bank of America Corporation*, 2019 WL 2745856 at *2.

For the foregoing reasons, I conclude that 28 U.S.C. § 1346(a)(1) provides this Court with subject matter jurisdiction over Plaintiffs' Overpayment Interest Claims.

> B. The Court Lacks Subject Matter Jurisdiction Over Overpayment Interest Claims for Tax Years 2003 through 2006 Because Plaintiffs Did Not Timely File Administrative Claims for Those Tax Years

Plaintiffs do not dispute that they were required to timely file an administrative claim with the IRS for overpayment interest on the Carryback Refunds in order for this Court to have subject matter over their Overpayment Interest Claims under § 1346(a)(1). (ECF No. 76 at 20-24). The government concedes that Plaintiffs timely filed an administrative claim for overpayment interest for tax year 2007. (ECF No. 68 at 23 n. 10). Thus, the parties' jurisdictional dispute is limited to tax years 2003, 2004, 2005 and 2006.

> 1. Equitable Estoppel

As a threshold matter, Plaintiffs argue that the government is equitably estopped from disputing the timeliness of their administrative claims for overpayment interest. (ECF No. 76 at 20-21). Plaintiffs rely upon six (6) instances where they contend the IRS "lulled" them into filing their formal administrative claim (Form 843) after the deadline to do so. (*Id.* at 21). The fundamental problem with Plaintiffs' argument is that an untimely administrative claim cannot be excused for equitable reasons.

As Plaintiffs acknowledge, the Supreme Court holds that the deadlines set forth in 26 U.S.C.§ 6511 to file administrative claims with the IRS cannot be equitably tolled. *United States v. Brockamp*, 519 U.S. 347, 348 (1997). Plaintiffs attempt to work around this ruling by asserting, without support, that *Brockamp* applies *only* to equitable tolling and not to equitable *estoppel*. (ECF No. 76 at 20). I am not persuaded. The *Brockamp* Court

reasoned that "[s]ection 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S. at 352. Plaintiffs seek to use equitable estoppel as an exception to the deadlines set forth in § 6511. This is impermissible under *Brockamp*. Accordingly, I conclude that Plaintiffs cannot rely upon equitable estoppel to avoid the limitations period for filing their administrative claims for overpayment interest. *See Dickow v. United States*, 654 F.3d 144, 151 (1st Cir. 2011) ("[Taxpayer's] equitable estoppel claim fails because § 6511 is not subject to equitable exceptions under the Supreme Court's decision in *Brockamp*…").[6]

### 2. Tax Years 2003-2005

Plaintiffs filed their formal claim with the IRS for overpayment interest on September 10, 2014. (ECF No. 65 at ¶ 63, Ex. L). It is undisputed that, with respect to tax years 2003 through 2005, the deadline for Plaintiffs to do so was April 30, 2014 at the

---

[6] Even if equitable estoppel could apply to avoid the deadlines set forth in § 6511, Plaintiffs' argument still fails. Four of the six instances of IRS conduct that Plaintiffs rely upon occurred *after* the April 30, 2014 deadline to file administrative claims for overpayment interest. (ECF No. 76 at 21 (last four bullet points)). The IRS's conduct on these dates could not have "lulled" Plaintiffs into filing their administrative claims late. Moreover, the Eleventh Circuit "hold[s] that to establish a claim for equitable estoppel against the government, the party seeking to establish estoppel must prove, in addition to the traditional elements of estoppel, some affirmative misconduct by the government." *Tefel v. Reno*, 180 F.3d 1286, 1303 (11th Cir. 1999). The *Tefel* Court indicated that affirmative misconduct involves a violation of statutes or regulations, and that "incorrect advice" is not enough. *Id*. at 1304 (comparing cases). The remaining two instances of IRS conduct that Plaintiffs rely upon do not come close to constituting "affirmative misconduct." (ECF No. 76 at 21 (first two bullet points)).

latest. (ECF Nos. 68 at 21-22; 76 at 20 n. 19, 22).  Therefore, Plaintiffs filed their formal claim four and a half months late.

Plaintiffs argue that they satisfied the limitations period set forth in § 6511 because they filed two *informal* claims for overpayment interest before the April 30, 2014 deadline. (ECF No. 76 at 22-23). "It is well settled that a notice fairly advising the Commissioner of the nature of taxpayer's claim…will nevertheless be treated as a claim where formal defects…have been remedied by amendment filed after the lapse of the statutory period…There are no rigid guidelines except that an informal claim must have a written component and should adequately apprise the Internal Revenue Service that a refund is sought for certain years." *Mills v. United States*, 890 F.2d 1133, 1135 (11th Cir. 1989) (citation omitted). Plaintiffs argue that their Form 4549, filed on August 29, 2012, and Form 1045, filed on December 31, 2009, constitute informal claims for overpayment interest. (ECF No. 76 at 22-23). I evaluate each Form in turn.

The government does not dispute that according to the Internal Revenue Manual, a signed Form 4549 is a type of informal claim. (ECF Nos. 76 at 22 n. 22, 83 at 11-12). However, the government explains in its Reply that the Form 4549 Plaintiffs rely upon do not reflect tax adjustments for the Carryback Refunds but, rather, for the Fictitious Income Refunds which are not at issue in this lawsuit.[7]  (ECF No. 83 at 11). Given that Plaintiffs' Form 4549 did not relate to the Carryback Refunds, it could not have "fairly advised" the

---

[7] There is no indication that Plaintiffs dispute the accuracy of this statement (e.g., they did not seek leave to file a sur-reply to correct the government's assertion).

IRS of the Overpayment Interest Claims. I therefore conclude that Plaintiffs' Form 4549 is not an informal claim for overpayment interest on the Carryback Refunds.

As for Plaintiffs' Form 1045, they contend that it constitutes either a formal or informal claim for overpayment interest. Form 1045, titled Application for Tentative Refund, is the document in which Plaintiffs initially sought the Carryback Refunds. (ECF No. 65 at Ex. A). Plaintiffs do not cite any case law establishing that, for purposes of satisfying the deadlines set forth in § 6511, a Form 1045 constitutes a formal claim for overpayment interest.[8] Nor have Plaintiffs established that their Form 1045 constitutes an informal claim for overpayment interest. Pursuant to 26 U.S.C. § 6611(e), the United States shall not owe *any* interest on overpayments until 45 days after a claim is filed. *See* 26 U.S.C. § 6611 (e), (f), (g). Neither Plaintiffs nor the IRS could know whether Plaintiffs might be entitled to interest on the Carryback Refunds at the time Plaintiffs filed their Form 1045 because the 45-day grace period had not expired and, indeed, no overpayment had been made yet. Thus, Plaintiffs' Form 1045 could not have "fairly advised" the IRS of their Overpayment Interest Claims.

"The party asserting federal jurisdiction has the burden of proving that subject matter jurisdiction exists." *Bank of America Corp. v. United States*, No. 3:17-CV-546, 2019 WL 1349687 at *1 (W.D. N.C. Jan. 1, 2019) (report and recommendation adopted by *Bank of America Corp.*, 2019 WL 2745856 (citations omitted). For the reasons set forth above,

---

[8] Plaintiffs cite only *Coca-Cola Co. v. United States*, which addressed a different issue: entitlement to overpayment interest. 87 Fed. Cl. 253, 257 (Fed. Cl. 2009). The *Coca-Cola* Court concluded that "for the *limited purposes* of determining entitlement to overpayment interest, a tentative refund application also acts a claim for refund." *Id*. (emphasis supplied).

Plaintiffs have not met their burden. Accordingly, I conclude that the Court lacks subject matter jurisdiction over Plaintiffs' Overpayment Interest Claims for tax years 2003 through 2005, because Plaintiffs did not timely file an administrative claim for overpayment interest for those tax years.

        3.     Tax Year 2006

With respect to tax year 2006, Plaintiffs' administrative claim may be governed by a later deadline than applicable to tax years 2003 through 2005. Pursuant to 26 U.S.C. § 6511(a), a taxpayer has two years "from the time the tax was paid" to timely file an administrative claim. Plaintiffs' latest payment for tax year 2006 was effective on April 15, 2012. (ECF Nos. 68 at 23; 76 at 23-24). Plaintiffs did not file their administrative claim for overpayment interest until September 2014, more than two years later. However, the parties agree that if the "deemed payment" rule applies, Plaintiffs' administrative claim is timely. (ECF Nos. 68 at 23, 76 at 23-24).

The "deemed payment" rule is set forth in 26 U.S.C. § 7422(d), which provides that "[t]he credit of an overpayment of any tax in satisfaction of a tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." 26 U.S.C. § 7422(d). Plaintiffs' latest payment for tax year 2006 resulted from a transfer of an overpayment from Plaintiffs' 2011 tax year into their 2006 tax year account (the "Transfer"), which the IRS allowed in late September or early October of 2013. (ECF Nos. 68 at 23, 76 at 23-24). If the "deemed payment" rule applies, Plaintiffs' latest payment for tax year 2006 is deemed

effective in the fall of 2013 when the IRS allowed the Transfer, thereby extending the deadline to file an administrative claim until the fall of 2015.

The "deemed payment" rule, by its express terms, applies only in limited circumstances, that is "for the purpose of any suit for *refund of such tax liability so satisfied....*" 26 U.S.C. § 7422(d) (emphasis supplied). This action is for unpaid interest on the Carryback Refunds. It is not a suit to obtain a refund of a tax lability previously satisfied. As another court explained, "overpayment claims are not refund suits. This is because the United States is compensating the taxpayer for interest on the taxpayer's money, not returning funds improperly paid." *Bank of America Corp.*, 2019 WL 2745856 at *3 (citations omitted).

In their Response, Plaintiffs offer no analysis why the "deemed payment" rule should apply here. They summarily conclude that the government's argument "is without merit" and make a general reference to their earlier argument. (ECF No. 76 at 24). This is insufficient to meet their burden.

For the foregoing reasons, I conclude that the "deemed payment" rule is inapplicable and, therefore, Plaintiffs' administrative claim for overpayment interest is untimely. This being so, the Court lacks subject matter jurisdiction over Plaintiffs' Overpayment Interest Claim for tax year 2006.

### III.     RECOMMENDATION

Given the above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT IN PART** Defendant's Motion to Dismiss (ECF No. 68), and dismiss Plaintiffs' claims for overpayment interest for tax years 2003, 2004, 2005 and 2006 without prejudice for lack

of subject matter jurisdiction. I **FURTHER RECOMMEND** that the Court **DENY** Plaintiffs' request to take jurisdictional discovery before ruling on the Motion to Dismiss.

**No later than September 10, 2019** the parties may file any written objections to this Report and Recommendation with the Honorable Kathleen M. Williams, who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016). **No later than September 13, 2019**, the parties may file a response to the other parties' objection.

RESPECTFULLY SUBMITTED in chambers at Miami, Florida this 30th day of August, 2019.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc: Honorable Kathleen M. Williams
    Counsel of Record